IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**STEPHEN C. COOPER**                                                        **PLAINTIFF**

 **V.**                                                      **CAUSE NO: 3:07CV005-EMB**


**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY**                                          **DEFENDANT**


### MEMORANDUM OPINION

Plaintiff, Stephen Cooper, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of an unfavorable final decision of the Commissioner of the Social Security Administration (the "Commissioner"), regarding his application for disabled adult child's disability benefits under Title II. The parties have consented to entry of final judgment by the undersigned United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. Having duly considered the briefs of the parties, the administrative record and the applicable law, the Court rules as follows.

### Administrative Proceedings

Plaintiff filed an application for disabled adult child's disability benefits under Title II on November 20, 2003, alleging a disability onset date of January 31, 2003. (Tr. 21, 64-66). The application was denied initially and on reconsideration. (Tr. 31, 38-41, 32, 44-47).

In a hearing decision dated March 22, 2006, an administrative law judge ("ALJ") found that Plaintiff was not disabled as defined in the Act. (Tr. 21-29). The ALJ's

hearing decision became perfected as the final decision of the Commissioner when the Appeals Council, after considering additional evidence (Tr. 9-13), denied Plaintiff's request for review on November 15, 2006 (Tr. 6- 7). The ALJ's final hearing decision is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## Facts

Plaintiff was born in 1985 and was 21 years of age at the time of the hearing decision on March 22, 2006. (Tr. 21, 29, 64). He graduated from high school in a special-education program. (Tr. 21, 29, 95, 409). Plaintiff has no past relevant work. (Tr. 21, 29, 90). Plaintiff alleged that he could not work due to a history of brain tumor, back and joint disorders, and learning disorders. (Tr. 21, 89). However, after a careful review and evaluation of the medical evidence of record, the subjective testimony at the hearing (Tr. 26-27, 375-408), and the testimony of a vocational expert (Tr. 28, 408-14), the ALJ found Plaintiff not disabled (Tr. 29). Contrary to Plaintiff's allegation of disability, the ALJ found that he had no physical limitations upon his ability to work and he had "limited but satisfactory" ability to perform various components of mental functioning. (Tr. 28).

## Standard of Review

This Court reviews the Commissioner's/ALJ's decision only to determine whether it is supported by "substantial evidence" on the record as a whole and whether the proper legal standards were applied. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Furthermore, in applying the substantial evidence standard, this Court scrutinizes the record to determine whether such evidence is present. This Court will not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Id.*, citing *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989); *see also Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).

## **Law**

To be considered disabled and eligible for benefits, Plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 1995. The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[1] *Id*. §§

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id*. §§ 404.1520(c), 416.920(c).

404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990). The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. *Id*. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *Greenspan*, 38 F.3d at 236; *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir.1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant," *Id*.; *accord Selders*, 914 F.2d at 618.

---

> Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id*. §§ 404.1520(d), 416.920(d).
>
> Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id*. §§ 404.1520(e), 416.920(e).
>
> Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id*. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id*. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994)("Medical-Vocational Guidelines").

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history," *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

## Analysis

Plaintiff asserts three issues for this appeal: 1) whether the Commissioner erred in finding Plaintiff did not suffer from any physical impairments and in failing to explain his basis for not crediting Plaintiff's weakness and fatigue; 2) whether the Commissioner erred in discrediting the medical opinions of treating and examining physicians with regard to Plaintiff's mental impairment and in relying upon the opinion of a non-examining state agency psychologist's assessment; and 3) whether the Commissioner erred in relying upon the VE's response to a hypothetical question that was based upon a mischaracterization of the state agency non-examining psychologist's opinion.

*Issue 1*

Plaintiff presents a hodgepodge of arguments under the first issue. Nonetheless, the Court has taken care to give due consideration to each of them. To begin, Plaintiff contends the ALJ erred in finding he did not suffer from any physical impairments and in failing to explain his basis for not crediting his weakness and fatigue. Pl.'s Brief p. 11-16. Specifically, Plaintiff asserts the ALJ failed to consider the effect that limitations

secondary to a brain tumor removal had on his ability to perform gainful work activity. Pl.'s Brief pp. 11-12.

*A. ALJ's Assessment of Plaintiff's Physical Limitations*

Plaintiff was hospitalized at the age of four from February 24, 1989, through March 10, 1989, at Le Bonheur Children's Medical Center for the removal of a malignant brain tumor. (Tr. 160-71, 343). Plaintiff required radiation therapy to the brain in April 1989. (Tr. 172, 309). Treatment associated with this event resulted in hypopituitarianism and stunted growth. (Tr. 258-67, 343). Additionally, Plaintiff suffered diminished bilateral hearing, especially as to high-pitched noises, and he was obese among other things. (Tr. 258-67, 315, 318, 343). Ongoing treatment consisted of replacement thyroid hormone, testosterone and hydrocortisone, as well as vitamin D and calcium due to resulting osteopenia. (Tr. 263, 317, 343, 405). Plaintiff contends these conditions caused weakness and fatigue which made it impossible for him to be gainfully employed.

As an initial matter, the Court disagrees that the ALJ failed to consider the effect these conditions had on Plaintiff's capacity for work activity. At step two of the sequential evaluation process, the ALJ specifically found that the Plaintiff did not suffer from a *severe* impairment related to the craniotomy for excision of his brain tumor or any other *severe* physical impairment. (Tr. 25). The ALJ assigned very limited weight to the opinion of T. David Griffin, D.O., F.A.A.F.P., that Plaintiff suffered from serious conditions that prevented him from doing even sedentary work. (Tr. 26). Additionally, the ALJ relied on Plaintiff's own concession to Joe E. Morris, Ph.D., that he did not

6

suffer from any physical difficulties and the state agency medical consultant's finding that Plaintiff had no *severe* physical impairments. (Tr. 25). And, with regard to the ALJ's RFC determination at step four, the Court is obliged to point out that during the administrative hearing, the ALJ questioned Plaintiff extensively about his activities of daily living and physical problems. (Tr. 386-400). Plaintiff responded that he had a weak immune system and couldn't lift or stand long but had no other important problems with his body. (Tr. 397-400). Plaintiff even admitted he could lift fifty pounds of dog food comfortably. (Tr. 398-99). The ALJ also questioned Plaintiff's mother extensively about his fatigue. (Tr. 401-403, 405-406). She testified that Plaintiff didn't have any strength (Tr. 401), that he was always tired (Tr. 406), and that he couldn't mow the lawn because his back hurt (Tr. 402). She also testified that he took testosterone to help with his tiredness. (Tr. 405). The ALJ found Plaintiff's and his mother's testimony less than credible. (Tr. 26). Finally, even Jim Adams, M.D.'s assessment, on which Plaintiff heavily relies in this case, indicates that notwithstanding Plaintiff's alleged physical impairments, he met the exertional requirements for a range of light work. (Tr. 26, 346-47).

    *B. Weight Assigned to Physician Opinions*

Plaintiff also contends the ALJ improperly discredited the opinion of his treating physician and another examining physician. As mentioned above, the ALJ accorded only limited weight to the opinion of Dr. Griffin. (Tr. 23, 26, 298). Dr. Griffin had treated Plaintiff at the Family Medical Clinic in Houston, MS, for intermittent complaints of

7

genito-urinary scar tissue, left ear pain, and acid reflux during the period August 1999 through December 2003. (Tr. 23, 299-308). On the basis of this treatment relationship, Dr. Griffin opined by letter dated December 3, 2004, that Plaintiff was completely disabled due to his multiple "serious diagnoses." (Tr. 23, 298). Dr. Griffin indicated that these diagnoses rendered Plaintiff so chronically weak that he could not sit, stand, or concentrate for more than a few minutes at a time. (Tr. 23, 298). Later, on June 23, 2005, Dr. Griffin opined in the form of a Medical Source Statement that Plaintiff could perform significantly less than the full range of sedentary work due to "multiple endocrine failures" that resulted in weakness which made it impossible for him to "hold a job." (Tr. 23, 330-33).

The Court finds the ALJ stated sufficient cause for discounting Dr. Griffin's assessment. (Tr. 23). Ordinarily, the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). When good cause is shown, less weight, little weight, or no weight may be given to the physician's opinion. *See Id.* Good cause exceptions recognized by the Fifth Circuit include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *See Id.* Here the ALJ recognized that Dr. Griffin had not treated Plaintiff for any of his putative "severe" impairments and that Dr. Griffin's assessments were inconsistent with his own treatment notes. (Tr. 23,

26). Thus, Dr. Griffin's opinions did not satisfy the Commissioner's requirement of "supportability" by relevant evidence, such as medical signs and laboratory findings. *See* 20 C.F.R. § 404.1527(d)(3). Additionally, to the extent that Dr. Griffin expressed his view as to the ultimate issue of disability, the Court agrees with Defendant that such is not a medical opinion but rather a finding that is reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e). Lastly, as the ALJ pointed out, Dr. Griffin's assessment was inconsistent with other evidence in the case. (Tr. 26). The Court specifically notes that Dr. Griffin's conclusion of disability was even contrary to the August 2005 opinion of Dr. Adams, who had an opportunity to examine Plaintiff.

However, the ALJ assigned only limited weight to the opinion of Dr. Adams as well. (Tr. 26). The ALJ pointed out that on the basis of essentially negative findings, Dr. Adams concluded that Plaintiff was limited to light work. (Tr. 24, 26, 346). Dr. Adams's finding that Plaintiff could lift no more than 20 pounds on occasion conflicted with Plaintiff's own testimony that he could comfortably lift 50 pounds of dog food. (Tr. 26, 346, 399). *See Wingo v. Bowen*, 852 F.2d 827 (5th Cir. 1988)(as trier of fact, ALJ is charged with responsibility to determine what weight to give conflicting evidence presented at hearing).

Notwithstanding the foregoing, Plaintiff argues that the opinions of Dr. Griffin and Dr. Adams are supported by the records of St. Jude Children's Research Hospital which show that he has reported poor stamina, daytime sleepiness and joint pain, among other things, and that he suffers from obesity. Pl.'s Brief pp. 12-13. Here the Court should

remind Plaintiff that it is not the job of this Court to scour the record for evidence in support of his position. Rather the duty of the Court is to determine whether substantial evidence supports the ALJ's conclusions. Accordingly, the Court reiterates that even the assessment of Dr. Adams is inconsistent with the conclusion that Plaintiff's impairments made it impossible for him to perform any work activity. Indeed, Plaintiff testified during the administrative hearing that he could have completed a number of household chores and other tasks had he been given the opportunity. (Tr. 387-93). Notwithstanding this, a summary of Plaintiff's condition prepared by Dr. Stuart Kaplan of St. Jude failed to include either fatigue or poor stamina as long term effects of Plaintiff's treatment. (Tr. 309).

*C. ALJ's Development of the Record*

Plaintiff goes further to argue that his case was complicated because it involved multiple endocrine systems and that the ALJ should have sought additional clarification from Dr. Adams and should have re-contacted Dr. Griffin or another endocrinologist. Pl.'s Brief p. 15. However, Plaintiff gives no explanation of what additional clarification was necessary with regard to Dr. Adams's assessment. Additionally, in light of the fact that Dr. Griffin only actually treated Plaintiff for a limited number of ailments, the Court is hard-pressed to understand why the ALJ should have re-contacted him.

D. *Other Arguments*

Finally, with regard to Plaintiff's arguments that the ALJ improperly relied upon Dr. Morris' narrative summary and upon state agency physician's "outdated" assessment,

10

Pl.'s Brief pp. 15-16, the Court finds these arguments are amiss as well. The ALJ noted that Plaintiff and his mother had "conceded repeatedly and significantly to Dr. Morris that he experiences no physical difficulties." (Tr. 25). Dr. Morris conducted a comprehensive mental status examination of Plaintiff on July 21, 2005. (Tr. 334-39). Dr. Morris's narrative clearly states that Plaintiff had reported that he "had some physical problems" but that Plaintiff did not present with any physical problems that day. (Tr. 335). Additionally, Dr. Morris found it worthy of note that both Plaintiff and his mother were asked on two occasions about his physical problems but none were indicated. (Tr. 335). The Court finds the record sufficiently supports the ALJ's interpretation of Dr. Morris's report.

As regards the state agency medical consultant's opinion that Plaintiff lacked any severe physical impairment, Plaintiff argues that "it was prepared at the initial level before the majority of the evidence was submitted in this case." Pl.'s Brief pp. 15-16. However, Plaintiff makes no reference whatsoever to that crucial evidence of physical impairments he claims was added to the record following the submission of the state agency physician's opinion. For this reason and because the ALJ specifically found that the state agency medical consultant's assessment was in accord with the record as a whole (Tr. 27-8, 279-97), the Court finds no error was committed by the ALJ.

Based on the foregoing, the Court completely dismisses the first issue.

*Issues 2 & 3*

For the second issue, Plaintiff essentially argues that the ALJ erroneously

discredited the opinions of all examining medical sources regarding his mental impairment and relied upon the opinion of Dr. Register, a non-examining state agency psychologist, whose opinion conflicts with them all. Pl.'s Brief pp. 16-21. Plaintiff ultimately claims the assessments of these examining physicians prove that he is "significantly more limited" with regard to his mental impairment than found by the ALJ. Pl.'s Brief pp. 17-21. Plaintiff also adds the argument that the ALJ's hypothetical presented to the vocational expert was flawed because the only limitation included was that he had "'limited but satisfactory abilities' to perform all mental functioning requirements of work." Pl.'s Brief p. 20. As regards issue three, Plaintiff continues this claim by arguing that the ALJ erroneously relied upon the vocational expert's testimony which was based upon a "mischaracterization" of the state agency non-examining psychologist's opinion. Pl.'s Brief pp. 21-23. The Court disagrees with each of these contentions. Having thoroughly reviewed all the medical evidence, the Court is convinced that Dr. Register's assessment is amply supported by other medical evidence of record. Nonetheless, the Court will briefly recite the relevant medical evidence.

*Dr. Register*

The ALJ obtained Angela Register, Ph.D., a clinical psychologist, as the state agency psychological consultant. (Tr. 27-28, 279-97). On February 12, 2004, Dr. Register completed a Mental Residual Functional Capacity Assessment for Plaintiff. (Tr. 279-82). Notably, she found Plaintiff had "moderate" limitations regarding his ability to

understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to interact appropriately with the general public; to get along with coworkers or peers without distracting them to exhibiting behavioral extremes (occasional); and to set realistic goals or make plans independently of others. (Tr. 279-80). She further remarked that Plaintiff could understand, recall, and carry out simple, routine instructions over a normal workday/workweek. (Tr. 281). He was capable of adequate social interactions in settings/activities that did not impose high social demands. (Tr. 281). Although his tolerance for high stress was limited, he was capable of adapting adequately to changes and demands of activities that had simple, routine instructions. (Tr. 281).

Additionally, Dr. Register found that Plaintiff could complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; maintaining socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation. (Tr. 280).

*Dr. Drumheller*

At the request of the state disability agency, on December 13, 2002, Dr. Philip Drumheller performed a psychological evaluation on Plaintiff. (Tr. 194.) It was noted

that Plaintiff needed help remembering to take his medication but that he helped around the house by burning trash and feeding the dogs. (Tr. 194). Upon administration of the WAIS-II test Plaintiff scored a verbal IQ of 74, performance IQ of 69 and full IQ score of 69. (Tr. 196). Based on testing and observation, he was diagnosed with chronological disorder, mild mental retardation and disorder of written expression. (Tr. 196). It was noted that Plaintiff was believed to be "mildly impaired" in his ability to perform routine, repetitive tasks, to interact with peers, and to receive supervision. (Tr. 197). It was also noted that his concentration and attention were believed to be poor. (Tr. 197).

*St. Jude Mental Health Professionals*

Plaintiff was seen at the endocrinology clinic of St. Jude on January 30, 2003. (Tr. 240). His mental examination showed slow processing. He was subsequently evaluated by Behavioral Medicine Division of St. Jude for protocol screening. (Tr. 252). It was determined that Plaintiff suffered from a "significant anxiety disorder." (Tr. 252).

On August 25, 2003, Sean Phipps, Ph.D., a licensed clinical psychologist, examined Plaintiff at the request of the Behavioral Medicine Division. (Tr. 310-313). It was noted that Plaintiff responded slowly and appeared somewhat passive. (Tr. 311). Additionally, he presented as slightly anxious and did not engage in spontaneous conversation. (Tr. 311). It was further indicated that Plaintiff no longer had a hearing aid and that no difficulties with his vision or hearing were observed during testing. (Tr. 311). Both his fine and gross motor abilities were judged to be within normal limits. (Tr. 311).

Dr. Phipps administered the WAIS-III to Plaintiff. (Tr. 311). Plaintiff's verbal IQ

14

was 81, his performance IQ was 83, and his full scale IQ was 80. (Tr. 311). This indicated intellectual functioning within the lower limits of the low average range. (Tr. 311). Dr. Phipps opined that due to Plaintiff's "significant" memory and learning/academic deficits and his symptoms of anxiety and *reported* panic attacks, it was "unlikely that he would be able to obtain gainful employment following high school." (Tr. 312).

In August 2005, Plaintiff's mental functioning was again evaluated, this time by James L. Klosky, Ph.D., a post-doctoral psychology fellow. (Tr. 348-52). Dr. Klosky found that Plaintiff was within the low average range of intellectual functioning, as confirmed by his general intellectual abilities score of 81 on the Woodcock-Johnson III Tests of Cognitive Abilities. (Tr. 350). Dr. Klosky noted that Plaintiff's complaints of anxiety spells did not appear to affect his ability to get out in public and that Plaintiff reported that he enjoyed socializing with others. (Tr. 349). It was noted that symptoms consistent with post traumatic stress disorder, acute stress disorder, depressive disorder and adjustment disorder were <u>negative</u> and Plaintiff only suffered from anxiety disorder at the time. (Tr. 349). Dr. Klosky recommended that Plaintiff become involved in a developmentally appropriate work or educational setting. (Tr. 351). While Dr. Klosky noted that Plaintiff's current every day adaptive skills were at the age-equivalent level of six years six months, he also thought it probable that Plaintiff could be taught to improve his adaptive skills with training. (Tr. 351). Dr. Klosky noted the limiting effect of Plaintiff's dependence upon his mother. (Tr. 350).

*Dr. Whelan*

Earlier on January 29, 2004, Michael Whelan, Ph.D., a psychologist, conducted a consultative evaluation of Plaintiff. (Tr. 274-77). Dr. Whelan noted that Plaintiff could follow simple work rules and had sufficient attention and concentration to do simple routine tasks. (Tr. 276-77). Dr. Whelan found Plaintiff had borderline intelligence. (Tr. 277). He indicated that Plaintiff suffered from a post traumatic stress disorder with chronic depression, did not have any peer relations after school hours and was very emotionally dependent upon his mother. (Tr. 277). Dr. Whelan opined that Plaintiff would "probably work best in a work setting where he did not have to interact very much with other people." (Tr. 277).

*Dr. Morris*

Finally, Plaintiff underwent a comprehensive mental status evaluation conducted by Joe Edward Morris, Ph.D., on July 21, 2005, at the request of Disability Determination Services. (Tr. 334-42). Dr. Morris noted that Plaintiff was apathetic and exhibited a marked tendency to give up easily on questions. (Tr. 337). He also noted that there were <u>no</u> indications of depression and that Plaintiff exhibited "only a few indications of some symptoms possibly associated with an older PTSD symptomatology" that had <u>dissipated</u>. (Tr. 337). Dr. Morris found <u>no</u> symptoms that would indicate panic episode or panic disorder. (Tr. 338). He noted that the most dominant impression he had of Plaintiff was of his "slothfulness and indolence and his lack of effort." (Tr. 338). Dr. Morris found that Plaintiff could understand and follow simple instructions and perform simple

16

calculations. (Tr. 338). He further noted Plaintiff could respond favorably to supervision and interact cooperatively with co-workers. (Tr. 338). Dr. Morris did not think that Plaintiff's concentration and attention were significantly affected and noted that he was able to perform routine, repetitive work-related tasks. (Tr. 339). He indicated that Plaintiff could do simple math problems and by his own admission made routine store purchases. (Tr. 339).

Based on this evidence, the Court finds the ALJ's mental RFC determination (Tr. 26-7) is supported by substantial evidence. The ALJ gave sufficient reasons for discrediting the opinions of record; and the evidence considered as a whole, including Plaintiff's own testimony regarding his daily activities (Tr. 376-78, 383-84, 386-96), supports the conclusion that he was capable of performing routine repetitive tasks, maintaining sufficient concentration and successfully interacting with supervisors and coworkers. Indeed, the Court notes that in presenting this issue, Plaintiff makes no attempt to point out those mental impairments he claims were more limiting than found by the ALJ. Nor does he attempt to point out for the Court the conflicts he claims exist between the opinions of Dr. Register and "every [other mental health] opinion in the record."

As regards Plaintiff's argument that the ALJ's hypothetical presented to the vocational expert was flawed, the Court finds it fails as well. Plaintiff contends the ALJ "improperly extrapolated" with regard to Dr. Register's findings to the point that he presented Plaintiff's mental limitations as "relatively minimal" in a hypothetical

presented to the vocational expert. The transcript of the hearing testimony shows the contrary. The ALJ expressly referred the vocational expert to the exhibit containing Dr. Register's full assessment. (Tr. 412). And, prior to his testimony, the vocational expert testified that he had reviewed all exhibits and heard all testimony presented. (Tr. 408). Indeed, in making this argument, Plaintiff even admits that the ALJ's RFC assessment in his decision is more limiting than the extrapolation presented to the vocational expert. Pl.'s Brief p. 20. When a hypothetical question reasonably incorporates all of the 'disabilities' *found by the ALJ* and claimant's representative was provided an opportunity to "correct any defect" about additional limitations, the hypothetical question is sufficient. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Furthermore, based on the same reasoning, the Court concludes that the ALJ properly relied upon the vocational expert's testimony that Plaintiff was capable of performing work on a sustained basis.

Therefore, the Court is of the opinion that the ALJ's decision that Plaintiff's mental condition was not disabling is supported by substantial evidence in the record.

## **Conclusion**

It is the opinion of the Court that the decision of the Commissioner be affirmed and that this appeal be dismissed. A final judgment consistent with this opinion will be entered.

**SUBMITTED THIS** 18th day of April, 2008.

/s/ Eugene M. Bogen
U. S. MAGISTRATE JUDGE